

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Overruled by WW-274
where conflicts

Honorable Jno. Q. McAdams, Commissioner
State Department of Banking
Austin, Texas

Dear Sir:

Attention: Mr. M. T. Jamison,
Deputy Commissioner

Opinion No. 0-5858
Re: Construction of Article
1524a, R.C.S. with respect to
examination of corporations
which have sold certain obli-
gations issued by them.

Your request for an opinion upon the above
subject-matter is quite lengthy, but due to the fact
that it sets forth quite in detail the particular trans-
action under review, we copy it in full:

"We invite your attention to Article 1524a, and
particularly to the last sentence of Section 12 thereof,
which reads as follows:

"'The words "bonds", "notes", "certifi-
cates", "debentures", and "other obligations",
as used in this Act, shall not be construed
to cover or include notes executed by corpora-
tions to banks and other financial institu-
tions for money borrowed by such corporations
for use in the usual course of its business."

"Heretofore this Department has presumed that cor-
porations organized pursuant to the provisions of Article
1524a which have sold an issue of bonds, notes, certificates,
debentures and other obligations to a financial institution
for the purpose of obtaining working capital to be used by
said corporation in the usual course of its business was ex-
cluded from Section 2 of the above mentioned Article which
has to do with the examination of such corporations annually
or oftener by the Banking Commissioner of Texas.

ION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"If it should be held that the only exclusion from the provisions of the Act in its entirety is in connection with 'note' obligations that are executed by corporations to banks and other financial institutions, then it would seem important for this Department to be advised as to distinguishing characteristics between notes and the other type of obligations which are referred to in the law, to-wit, bonds, certificates, debentures, etc. The basis of the reasoning on the part of this Department in respect to the procedure which it has followed has been to the effect that the examination of such corporations embrace a public interest in the sense of individual citizens owning the obligations of such corporations and that the same public interest did not present itself in the case of a financial institution, such as an insurance company owning the bonds, certificates, debentures and other type of obligations issued by corporations organized pursuant to Article 1524a.

"We therefore solicit your advice as to whether or not this Department must give literal interpretation to the last sentence of Section 12 of the Act which would seem to exclude only notes executed by corporations and held by other financial institutions and, thus require this Department to examine annually or oftener those corporations which have issued any other type of obligation even though the same is held by a financial institution. In this connection we are pleased to enclose a series of letters, identified as Exhibit "A", to and from Mr. Dexter Hamilton, President of the Southwestern Investors Corporation of Dallas, Dallas, Texas, which is a direct case in point. We have not in recent years examined this corporation, although their counsel concedes that the corporation is subject to examination by this Department.

"You are further advised that your views on this subject may have far-reaching effects, since it is entirely likely that a number of corporations organized pursuant to Article 1524a have issued a type of obligation, other than notes, which is held in its entirety by some subsidiary corporation properly classifiable as a financial institution.

"As part two of this inquiry, we should like advice as to the responsibility of this Department which embraces the meaning of the term 'other obligations.' As a

Honorable Jno. Q. McAdams - page 3

ease in point we are attaching hereto a balance sheet
of the American General Investment Corporation, Houston,
Texas, as of close of business, December 31, 1942. This
balance sheet reflects, among other things, a trust fund
liability in the sum of $200,084.71. This particular
corporation was organized pursuant to the provisions of
Title 32, Chap. 2, Article 1303b. Our conception of the
trust fund account, as shown in the balance sheet, is
that the same represents payments made by individuals in
connection with a real estate loan executed by certain in-
dividuals and held by subject corporation on account of
tax and insurance accrual.

"To be more specific, you are advised that many
corporations have been organized for the purpose of hand-
ling what may be termed F. H. A. loans, the plan of oper-
ation embracing an agreement on the part of the debtor or
the applicant, who desires to finance the purchase of a
home through subject corporation, to pay not only a speci-
fied amount to be applied on the principal and interest
of the mortgage loan, but by agreement to pay an addition-
al sum each month to be held by the payee or holder of the
mortgage loan and at the proper time applied in payment of
the taxes which have accrued during the year against the
mortgaged property and, as indicated, to also provide for
insurance coverage. Actually, therefore such trust funds
as held by subject corporation and many others functioning
in a similar capacity are held for a period of twelve
months after which the trust fund account builds up through
monthly payments and in the normal course of handling is
again applied by the mortgagee in behalf of the charges
which accrue against the property owned by the mortgagee.

"We should like specific advice therefore as to
whether or not such a trust fund account is within the term
'other obligations' as used in the law and, if so, whether
or not it becomes mandatory on the part of this Department
to examine such corporations that are obligated to individ-
uals in such a manner."

Article 1524a regulates the activities of loan
and brokerage companies, and Section 4 thereof, insofar
as pertinent, is as follows:

"Such corporation that has sold in Texas its bonds, notes, certificates, debentures or other obligations or is offering for sale in Texas its bonds, notes, certificates, debentures or other obligations, shall publish in some newspaper of general circulation in the county where it has its principal place of business, on or before the 1st day of February each year a statement of its condition on the previous 31st day of December, in such form as may be required by the Banking Commissioner of Texas showing under oath its assets and liabilities and shall file a copy of such statement with the Banking Commissioner of Texas, together with a fee of Twenty-Five Dollars ($25.00) for filing. * * * ."

The pertinence of this quotation is that Section 12 of that Article quoted by you involves precisely the same classes of obligations enumerated in Section 4.

(1) Section 12 of Article 1524a quoted by you serves and was intended to serve only one purpose, that is, to exempt from the Act in any and all respects whatever "notes executed by such corporations to banks and other financial institutions for money borrowed by such corporations for use in the usual course of its business." In other words, such notes do not come within any provision of the Act -- they are specifically excepted. Such notes for borrowed money, "for use in the usual course of its business," are therefore something separate and apart from the "bonds, notes, certificates, debentures, and other obligations" mentioned throughout the Act.

The writer of this opinion, while employed by the Banking Commissioner as counsel, in Opinion No. 804 addressed to you, advised with respect to a bond as follows:

"The bond submitted is in the sum of $10,000.00 and is one of a series of bonds aggregating the principal sum of $500,000.00. It is payable to the registered owner ten

Honorable Jno. W. McAdams - page 5

years after date, providing for annual
interest at four per cent. It contains
no acceleration clause for default and
does not purport to be executed in favor
of any bank or other financial institu-
tion.

"Under no reasonable construction of
the statutes can it be said that this ob-
ligation is 'for money borrowed by said
corporation for use in the usual course
of its business.' Clearly it is the usual
and ordinary method of accumulating a capi-
tal for the prosecution of its corporate
purpose of accumulating and lending money.
This is not the borrowing of money 'for
use in the usual course of its business.'"

We think the advice given in that opinion cor-
rectly interprets the statute.

Notwithstanding the exemption contained in Sec-
tion 12, it is yet true that loan and brokerage companies
organized and operating under Article 1524a, (1) may not
"offer for sale or sell its bonds, notes, certificates,
debentures or other obligations in Texas" unless it shall
have an actual paid in capital of not less than Ten Thous-
and ($10,000.00) Dollars, (Sec. 1); (2) is subject to ex-
amination by the Banking Commissioner if "it has sold or
offers to sell in Texas its bonds, notes, certificates,
debentures, or other obligations", (Sec. 2); and (7) all
bonds, notes, certificates, debentures, or other obliga-
tions sold in Texas by any such corporation, shall be se-
cured in the manner pointed out in Sec. 7 of the Act.

The obvious purpose of examination and collater-
alization of the securities issued by such companies is
the protection of the public. This purpose by reason of
the exemption in Sec. 12 does not extend to the protect-
ion of banks and other financial institutions lending
money to such corporations for use in the usual course
of their business. In this respect a different character
of obligation is involved -- the usual short-time loan.
Banks and other financial institutions lending money for
such purposes as are mentioned in the exception being sub-
ject to constant examination, are deemed to be sufficient-
ly protected.

Honorable Jno. Q. McAdams - page 6

The "bonds", "certificates", "debentures", and "other obligations", as used throughout the Act, mean the instruments of whatever name issued by the company and sold to the public in Texas for the purpose of accumulating a working capital under their special charter power to accumulate money for the purpose of lending. Whereas, the expression, "money borrowed by such corporations for use in the usual course of its business", contemplates the usual, ordinary personal loans by a bank, or other financial institution, to meet the current needs of the company in the prosecution of its business, and not for the greater purpose of increasing its operating capital. It is, therefore, of no importance what such instrument of borrowing from the bank may be denominated -- whether notes, bonds, or what not -- it is the substance of the transaction rather than its name that controls the exemption. The word "notes" used in Section 12 defining the exemption in this connection is used in its broad and generic sense as evidencing the indebtedness of a borrower to a lender for the purpose mentioned, regardless of the exact classification of the instrument evidencing such loan. A simple IOU, an overdraft, or any other form of legal obligation evidencing the loan, would be sufficient.

Again, if the obligations of such company come within the class of obligations required to be collateralized, it would make no difference that such issue in whole or in part had been sold to banks or other financial institutions, for they are a part of the public to whom such obligations may not be sold except they be properly collateralized.

It follows from what we have said that we are of the opinion the departmental practice mentioned by you in this connection has been in error.

(2) The term "other obligations", as used throughout this Act, means the direct obligation of the issuing loan and brokerage company of the type of "bonds", "notes", "certificates" or "debentures." It is the usual and uniform rule of construction of instruments enumerating certain particulars followed by the expression "or other" such instruments. It is what is known in legal terms as the ejusdem generis doctrine or rule.

The liability of the loan and brokerage company, from whose balance sheet you quote "$290,094.71", is not that of the issuer of any "bonds, notes, certificates, debentures, or other obligations", that would call for or authorize examination of the concern under the Act. It is a liability to be sure, but it arises out of a transaction wholly dissimilar from the issuance of bonds, notes, certificates, debentures, and the like.

Of course, this liability is not within the exception mentioned in Section 12 of the Act, that is, it is not a note or other instrument whatsoever of the company evidencing a loan for use by the company in the usual course of its business.

That such a liability might be such as could become a serious matter with any going concern, is obvious. But the remedy for such a situation, if discovered, would be for your Department to relate the matter to the Attorney General for appropriate action.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

ASSISTANT GENERAL OF TEXAS

OS-MM


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN